UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ELAINE M. HARTSHORN KENNETT And RICKY A. KENNETT, <br><br> Plaintiff, <br><br> -vs- <br><br> LOIS J. NORTON, ELIZABETH M. THOMPSON, KELLY J. PARKER, HORRY COUNTY POLICE DEPARTMENT, CITY OF NORTH MYRTLE BEACH, NORTH MYRTLE BEACH POLICE DEPARTMENT, HORRY COUNTY SHERIFF'S OFFICE, and SYNCHRONY BANK, <br><br> Defendants. | Civil Action No. 4:24-cv-4625-JD-TER <br><br><br><br> **REPORT AND RECOMMENDATION** |

**I.      INTRODUCTION**

This case arises from an intra-familial dispute between Plaintiff Elaine Kennett and Elaine's mother, Defendant Lois J. Norton and Plaintiff Elaine's two sisters, Defendants Elizabeth M. Thompson and Kelly J. Parker regarding Elaine's use of Norton's Rakuten credit card, issued and managed by Defendant Synchrony Bank, and her subsequent arrest. Plaintiffs assert causes of action for false arrest and false imprisonment, malicious prosecution and abuse of process pursuant to both 42 U.S.C. § 1983 and state law. They also assert state law claims for negligence/gross negligence and recklessness, defamation, negligence, carelessness, and recklessness, and loss of consortium. Plaintiffs originally filed this action in the Court of Common Pleas, Horry County, South Carolina and Defendants removed the case to this court. Presently before the court are Defendants Horry County Police Department (HCPD) and Horry County Sheriff's Office's

1

(HCSO) Motion to Dismiss (ECF No. 4) and Defendant City of North Myrtle Beach's (City of NMB) Motion to Dismiss (ECF No. 7)[1]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. ' 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. This report and recommendation is entered for review by the District Judge.

## II.    FACTUAL ALLEGATIONS[2]

At all times relevant to this action, Plaintiffs resided in South Carolina. Compl. ¶ 31. Norton is Elaine's mother and resided with her for approximately nine years. Compl. ¶ 44. Elaine married Plaintiff Ricky Kennett on January 7, 2022, and shortly thereafter, differences arose between Plaintiffs and Norton. Compl. ¶ 50. As a result, Norton moved to Ohio in May of 2022 to live with Thompson, Elaine's sister. Compl. ¶ 50. Plaintiffs allege that Norton, Thompson, and Parker, Elaine's other sister, developed a plan to extort money from Plaintiffs after learning that Ricky was a wealthy individual. Compl. ¶¶ 49, 51. Part of the plan included demands made by Norton, Thompson, and Parker that Plaintiffs pay Norton's credit card bills while at the same time lying to various credit card companies that certain charges were fraudulent so that they would waive or write off the charges. Compl. ¶¶ 57, 58.

When Plaintiffs refused to pay the credit card bills, Norton and Thompson threatened to file criminal charges against them. Compl. ¶ 60. Norton and Thompson told the "Law Enforcement Defendants"[3] that Elaine used Norton's Rakuten credit card without Norton's knowledge, consent, or authorization. Compl. ¶ 61. Plaintiffs allege that Norton intentionally and

---

[1] This motion was filed by Defendants City of NMB and the North Myrtle Beach Police Department (NMBPD). They state that Plaintiffs incorrectly identified them as separate entities.
[2] Some factual allegations not relevant to the parties that filed the present motions to dismiss may be omitted.
[3] In their complaint, Plaintiffs refer to Defendants HCPD, HCSO, City of NMB, and NMBPD collectively as "the Law Enforcement Defendants." Compl. ¶ 23.

2

knowingly made Elaine an authorized user of the card and knew that Elaine was paying all the charges she made on the card as well as some of Norton's charges. Compl. ¶¶ 61, 65. On March 18, 2022, after differences arose between Plaintiffs and Norton, Elaine contacted Defendant Sychrony, who issued the card, and removed herself as an authorized user of the card. Compl. ¶ 63. Thereafter, Elaine made no further purchases on the card. Compl. ¶ 64.

Norton and Thompson repeatedly called law enforcement officers to complain of Elaine using Norton's card without permission and demanded that criminal charges be filed against Elaine. Compl. ¶ 66. Prior to July 11, 2022, Officer Maybank, a police officer with the HCPD, visited Elaine at her home to question her regarding her use of Norton's card. Compl. ¶ 67. After hearing Elaine's explanation and reviewing documentation Elaine had, Officer Maybank acknowledged that Elaine had done nothing wrong and stated "I am done here." Compl. ¶ 68. As such, Elaine believed no charges would be filed against her. Compl. ¶ 69. However, Norton, Thompson, and/or Parker continued to demand that Elaine be arrested. Compl. ¶ 70.

As part of their investigation, the Law Enforcement Defendants issued a subpoena or search warrant to Synchrony, who designated Brookshire to respond to the request. Compl. ¶¶ 71, 73. Plaintiffs allege that Syhchrony failed to thoroughly investigate its records prior to responding to the search warrant or subpoena and, thus, failed to provide the Law Enforcement Defendants with documents that would have exonerated Elaine. Compl. ¶¶ 74, 75. They also allege that the Law Enforcement Defendants failed to properly review the documents they did receive from Synchrony, which also would have exonerated Elaine. Compl. ¶ 75.

On June 26, 2022, Officers Fitzwater and Beaudoin swore out an affidavit in which they asserted,

3

> On or about May 4, 2022, in the area of 1430 HWY 17 North, Hobby Lobby, located in the City of North Myrtle Beach, the Defendant [Elaine] used the victim's Rakuten card to purchase items totaling 562.04. The victim stated that the Defendant is not an authorized user of the card. A search warrant was applied for and sent to Rakuten and Rakuten did advise that the Defendant is not an authorized user of the card.

Compl. ¶ 77 and Ex. B. Plaintiffs allege that the Law Enforcement Defendants failed to contact Hobby Lobby to verify whether Elaine made any purchases on May 4, 2022, via security footage or otherwise. Compl. ¶ 79. Plaintiffs allege that Elaine did not make any purchases at Hobby Lobby on May 4, 2022. Compl. ¶ 80.

Without requiring the Law Enforcement Defendants to provide any evidence to support the affidavit, the Honorable William L. Lynch issued an arrest warrant on June 26, 2022. Compl. ¶ 84. On July 11, 2022, Officers Wheeler, JD1, and JD2 arrested Elaine at her home in front of her husband and neighbors. Compl. ¶¶ 86-87. Plaintiffs allege that the three officers arrived in separate police cars and lingered at Elaine's home for over an hour to intentionally embarrass and humiliate Elaine. Compl. ¶ 88. They did not provide her with a copy of the affidavit or arrest warrant until 12:08 am on July 12, 2022. Compl. ¶ 90. Following her arrest, Elaine was detained at the Myrtle Beach jail and the the J. Rueben Long Detention Center while she awaited her bond hearing on July 12, 2022. Compl. ¶¶ 91-92. She was not given a mask to protect her from communicable diseases. Compl. ¶ 93.

At the detention center, a female officer forcibly removed Elaine's rings and injured her hand. Compl. ¶ 97. The holding cell had vomit and feces on the floor, mold and dust on the walls, there was not sufficient room to sit or lay, and the temperature was uncomfortably low. Compl. ¶¶ 97-98. Elaine's bond hearing was held at the very end of the hearings and she was required to pay a $500 cash bond, which represented almost one hundred percent of the amount she allegedly purchased on Norton's card. Compl. ¶ 100. She was released later in the day on July 12, 2022.

Compl. ¶ 106. Plaintiff's charge and her mug shot were reported by the local media. Compl. ¶ 108.

The criminal charge has since been nolle prossed and the bond paid by Elaine has been released. Compl. ¶ 121.

### III. STANDARD OF REVIEW

Defendants move to dismiss certain claims in this action pursuant to Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

3

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
>> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

## IV. DISCUSSION

### A. Claims Under 42 U.S.C. § 1983

Plaintiffs' complaint includes four causes of action under either § 1983 or "federal law" generally: Count I – "Violations of the Fourth Amendment for False Arrest and False Imprisonment Pursuant to 42 U.S.C. § 1983, the United States Constitution, and South Carolina Law"; Count II – "Violations of the Fourth Amendment for Malicious Prosecution Pursuant to 42 U.S.C. § 1983, the United States Constitution, and South Carolina Law";[4] Count IV – "Malicious Prosecution under Federal Law"' and Count V – "Abuse of Process under Federal Law."

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114

---

[4] Counts I and II seek redress for constitutional violations pursuant to § 1983 "and South Carolina Law." To the extent Plaintiffs are asserting claims under the South Carolina Constitution, it "does not provide for monetary damages for civil rights violations and the legislature has not enacted an enabling statute" like 42 U.S.C. § 1983 for violations of the Federal Constitution. Palmer v. State, 829 S.E.2d 255, 261 (S.C. Ct. App. 2019); Singleton v. S.C. Dep't of Corr., No. 9:22-cv-00940-JD-MHC, 2023 WL 5155937, at *7 (D.S.C. July 12, 2023), adopted by, 2023 WL 5155729 (D.S.C. Aug. 10, 2023).

S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

As an initial matter, the HCSO argues, and Plaintiffs concede, Pl. Resp. p. 8 (ECF No. 14), that it is not subject to suit under § 1983 because it is entitled to Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution prohibits suits against states in federal courts unless a state has waived its immunity. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). The State of South Carolina has expressly reserved its sovereign immunity under the Eleventh Amendment. See S.C. Code Ann. § 15-78-20(e). South Carolina sheriffs and their officers – including the HCSO – are arms of the state entitled to immunity under the Eleventh Amendment. See Gulledge v. Smart, 691 F. Supp. 947, 954-55 (D.S.C. 1988) (finding that a South Carolina sheriff is a state official), aff'd, 878 F.2d 379 (4th Cir. 1989); Clark v. Horry Cnty. S.C. Sheriff's Off., 2017 WL 4417715, at *2 (D.S.C. Sept. 13, 2017) ("Here, Plaintiff concedes, and the Court agrees, that he cannot maintain a federal constitutional claim in this Court against the Horry County Sheriff's Office or the [deputy] in his official capacity, as such claims are barred by Eleventh Amendment immunity. Since County Sheriffs are state officers, not county employees, a suit against the "Horry County Sheriff's Office" is a suit against the state of South Carolina for purposes of Eleventh Amendment immunity"), adopted, 2017 WL 4390717 (D.S.C.

5

Oct. 3, 2017). Further, the HCSO is not a "person" for purposes of Section 1983. The Supreme Court has expressly held that neither a state agency nor its officials acting in their official capacities are "persons" amenable to suit under Section 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Accordingly, summary judgment is appropriate as to all federal claims asserted against the HCSO.

Municipalities, like the HCPD, the City of NMB, and the NMBPD, are subject to suit under § 1983 in limited circumstances. A local government entity may be sued under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" to the plaintiff. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Before addressing whether Plaintiffs have sufficiently alleged constitutional violations resulting from the execution of a government's policy or custom to give rise to liability under § 1983, it is important to note that Plaintiff's four federal causes of action are largely duplicative and/or are not recognized under § 1983. As stated above, Plaintiffs assert federal causes of action for false arrest, false imprisonment, malicious prosecution, and abuse of process. "A claim for false arrest alleges that a warrantless arrest lacked probable cause; a claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause." Smith v. Munday, 848 F.3d 248, 257 (4th Cir. 2017). "A public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998)(internal citations omitted). The Fourth Circuit reiterated that "a false arrest claim must fail where it is made pursuant to a facially valid warrant." Dorn v. Town of Prosperity, 375 Fed. Appx. 284, 286 (4th Cir. 2010) (internal quotations and citations omitted). Here, Elaine was arrested pursuant to a facially valid

warrant, which Plaintiffs attached to their complaint.[5]  Therefore, Plaintiffs' cause of action for false arrest fails.  Further, false imprisonment is not a separate cause of action apart from false arrest; there is no distinction between the two.  See Iacobucci v. Town of Bonneau, No. 2:18-0152-DCN-BM, 2019 WL 5874210, at *2 (D.S.C. May 29, 2019), report and recommendation adopted, No. 2:18-CV-00152-DCN-BM, 2019 WL 4686433 (D.S.C. Sept. 26, 2019) (citing Wallace v. Kato, 549 U.S. 384, 388-89 (2007) (making no distinction between false arrest and false imprisonment and considering the two claims under the same standard); Kenley v. District of Columbia, 83 F.Supp.3d 20, 41 (D.D.C. 2015) (holding there is no real difference as a practical matter between false arrest and false imprisonment)).  Therefore, Plaintiffs' false imprisonment claim fails as well.

Plaintiffs also assert a claim for abuse of process under "federal law."  However, it is not clear that the Fourth Circuit recognizes a claim for abuse of process under 42 U.S.C. § 1983.  See Land v. Barlow, 21-cv-01883-RMG-MHC, 2021 WL 6495298, at *2 (D.S.C. Nov. 17, 2021) (recognizing that "the Fourth Circuit has not explicitly analyzed the nature of an abuse of process claim under § 1983" but that "district courts in the circuit, citing cases from other circuits, have held that abuse of process is, in effect, a denial of procedural due process"), adopted, 2021 WL 5997984 (D.S.C. Dec. 20, 2021).  In their response, Plaintiffs argue that "the denial of Plaintiff Elaine Kennett's constitutional rights, including, but not limited to, denial of procedural due process, supports their claim for abuse of process."  Pl. Resp. p. 7.  However, Plaintiffs do not

---

[5] Plaintiffs argue that the arrest warrant is not facially valid because it lists two different dates on which Elaine committed the purported violation.  See Arrest Warrant (stating that the violation occurred on January 5, 2022, but later stating that it occurred on May 5, 2022).  However, a typographical error on a warrant does not make the warrant invalid. McLean v. Mallott, 10 F.3d 806 (4th Cir.1993) (unpublished) (typographical error on arrest warrant did not render warrant invalid).  "The true inquiry ... is ... whether there has been such a variance as to affect the substantial rights of the accused. . .  A mere inaccuracy in setting forth the date of an offense in a criminal complaint would not appear to be a material or critical variance." United States v. Hull, No. 2:05CR37-2, 2005 WL 5921161, at *5 (N.D.W. Va. Nov. 9, 2005) (internal citations omitted), aff'd in part, dismissed in part, 239 F. App'x 809 (4th Cir. 2007).

7

allege in their complaint that they were denied procedural due process. Rather, they allege that "Defendants used the criminal prosecution of [Elaine], which was based on the intentionally, maliciously, and recklessly false information they provided, to carry out their plan/scheme/conspiracy, with the specific intent of embarrassing [Elaine], intentionally causing her severe emotional distress, and causing her and Mr. Kennett financial harm." Compl. ¶ 160. Because Plaintiffs' factual allegations are insufficient to support a federal cause of action for abuse of process, dismissal of this claim is appropriate.

Because Plaintiffs' federal causes of action for false arrest, false imprisonment, and abuse of process all fail, the only remaining federal cause of action is malicious prosecution. As stated above, "a claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause." Smith, 848 F.3d at 257. The arrest warrant attached to the complaint reveals that it was obtained by Officers Fitzwater and Beaudoin with the NMBPD. Because no one with the HCPD or the City of NMB was responsible for providing the probable cause to obtain the warrant, those two entities cannot be liable for malicious prosecution[6], even under Monell.

To prevail on a malicious prosecution claim, a plaintiff must show that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor. Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (citing Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012)). The third factor, termination in the plaintiff's favor, "does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." Thompson v. Clark, 596 U.S. 36, 49, 142 S.

---

[6] An arresting officer is not responsible for investigating the validity of a warrant prior to making an arrest. See, e.g., Smyth v. City of Lakewood, 83 F.3d 433, 1996 WL 194715, *4 (10th Cir. 1996) ("The officer is not required by the Fourth Amendment to ... research supporting documentation, or go behind the facial validity of a warrant before making the arrest.").

8

Ct. 1332, 1341, 212 L. Ed. 2d 382 (2022). Plaintiffs allege that Elaine was arrested pursuant to a warrant obtained by Officers Fitzwater and Beaudoin with the NMBPD, who did not conduct a thorough investigation into reports that she used her mother's credit card without authorization prior to signing an affidavit to that end, and, thus, the warrant issued based on that affidavit lacks probable cause. Plaintiffs also allege that the proceedings ended in Elaine's favor because it was nolle prossed. These allegations are sufficient to meet the factors set forth above. However, for the NMBPD to be liable for any actions taken by its officers, Plaintiffs must allege the additional factors set forth pursuant to Monell.

As stated above, a local government entity may be sued under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" to the plaintiff. Monell, 436 U.S. at 694. "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). Regardless of which theory a plaintiff proceeds under, all Monell claims require three elements: (1) identity of a specific "policy or "custom"; (2) attribution of the policy, and fault for its creation, to the municipality; and (3) an "affirmative link" between an identified policy or custom and a specific rights violation. Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987).

In the present case, to sufficiently state a claim for malicious prosecution against the NMBPD, Plaintiffs must allege that Elaine's Fourth Amendment rights were violated as a result

9

of some policy or custom created by the NMBPD of arresting individuals based on arrest warrants that lack probable cause. In their response to the Law Enforcement Defendants' motions, Plaintiff argue that they have alleged "a regular and consistent custom exists in Horry County and the City of North Myrtle Beach that permits or condones officers to perform favors for and/or provide preferential treatment to their friends and relatives. [Complaint, ¶ 39]. Further, Plaintiffs allege officers will not be prosecuted or punished for any such illegal and unlawful acts. [Complaint, ¶ 40]." Pl. Resp. p. 5. However, Officers Fitzwater and Beaudoin were officers with the NMBPD, not Horry County or the City of NMB. Further, the complaint lacks any factual allegations to support these conclusory statements. To sufficiently allege a custom or practice, Plaintiff must allege sufficient factual matter regarding a persistent and widespread practice that plausibly permits the inference that Defendants had actual or constructive notice of the practice. Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). The only factual allegations included in the complaint regard only Elaine's arrest. There are no additional facts regarding other instances of alleged favors or preferential treatment. "By only alleging facts related to that practice" leading up to Elaine's arrest on July 11, 2022, "Plaintiff[s] ha[ve] not satisfied [their] pleading burden." Ransom v. Page, No. 7:23-CV-00166-M, 2025 WL 77897, at *12 (E.D.N.C. Jan. 10, 2025) (citing Connick v. Thompson, 563 U.S. 51, 63 n.7 (2011)).

Plaintiffs also argue in their response that the ordinance Elaine purportedly violated "does not require the investigating officer to conduct any due diligence or thorough investigation prior to alleging that probable cause exists," Pl. Resp. p. 5, and that Defendants failed to properly train officers as to the extent of an investigation required before executing a probable cause affidavit, Pl. Resp. p. 7. However, the complaint includes no allegations, factual or otherwise, to these ends.

10

In sum, Plaintiff has failed to allege any plausible federal claims against HCPD, HCSO, City of NMB, and NMBPD in this case. The plausibility standard requires a plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.2009) (quoting Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 557). The factual allegations in the present complaint are limited to the events leading up to and subsequent to Elaine's arrest. There are no factual allegations regarding any policy or custom that would allow for liability against any of the municipalities named in this action. The Court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir.2006). Accordingly, dismissal of Plaintiffs' § 1983 and "federal" claims is appropriate, specifically, Counts I, II, IV, and V.[7]

### B.     State Law Claims

Plaintiffs also assert state law causes of action for negligence, gross negligence, and recklessness, malicious prosecution, abuse of process, defamation, and loss of consortium. Defendants Norton, Parker, and Thompson assert state law counterclaims against Plaintiffs for fraud, violation of the South Carolina Frivolous Proceedings Sanctions Act, unjust enrichment, and negligent misrepresentation     However, 28 U.S.C. § 1367(c)(3) provides, in pertinent part,

---

[7] Plaintiffs do not specifically state against whom each count is asserted in their complaint except for Count VII, which they assert only against Defendant Synchrony Bank. To the extent Plaintiffs intended to assert their federal causes of action in Counts I, II, IV, and V against all Defendants collectively, they do not allege that the remaining Defendants, Norton, Thompson, Parker, and Synchrony Bank, are state actors for purposes of their federal claims under § 1983. Private parties and entities are not state actors and are not amenable to suit under § 1983. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1985); see also Everette-Oates v. Chapman, No. 5:16-CV-623-FL, 2020 WL 231378, at *16 (E.D.N.C. Jan. 14, 2020), aff'd, No. 20-1093, 2021 WL 3089057 (4th Cir. July 22, 2021) (citing Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996)) (noting that absent an underlying constitutional violation by a state actor, private actors cannot be liable for conspiring to deprive a plaintiff of constitutional rights); Lee v. Town of Estes Park, 820 F.2d 1112, 1115 (10th Cir. 1987) ("the mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983").

"[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). In determining whether to retain jurisdiction, courts consider "the convenience and fairness to the parties, existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Shanaghan, 58 F.3d at 110. Here, the undersigned recommends that the district judge decline to retain supplemental jurisdiction over Plaintiff's state law claims. There are no issues of federal policy underlying the remaining state law claims. In addition, comity favors remand since the remaining claims are quintessential state law questions. In United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a superfooted reading of applicable law. . . . if the federal law claims are dismissed before trial ... the state claims should be dismissed as well." Accordingly, should the district judge accept the recommendation with respect to Plaintiff's federal claims, it is recommended that the court decline to exercise jurisdiction over the remaining state law claims and remand this case to the Court of Common Pleas, Horry County, South Carolina.[8]

---

[8] The Law Enforcement Defendants also move to dismiss Plaintiff's state law claims. However, because dismissal is appropriate for Plaintiffs' federal cause of actions in this case, it is likewise appropriate to allow the state court to address all remaining state law claims.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that the pending Motions to Dismiss (ECF Nos. 4 and 7) be granted with respect to all Plaintiffs' federal causes of action (Counts I, II, IV, V), that Plaintiffs' federal claims be dismissed in their entirety, and that this case be remanded to the Court of Common Pleas for Horry County.

 s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

June 13, 2025  
Florence, South Carolina